# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re

ULTIMATE ACQUISITION,
PARTNERS, LP, *et al.*,[1]

              Debtors.

_____/

Chapter 11
Case No. 11-10245 (MFW)

Jointly Administered
Objection Deadline: TBD
Hearing Date: TBD

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER APPROVING STORE LIQUIDATING CONSULTANTS, CONSULTANT AGREEMENT, STORE CLOSING SALES AND RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") seeking entry of an order: (a) authorizing the Debtors to retain Gordon Brothers Retail Partners, LLC ("Gordon") and Hilco Merchant Resources, LLC ("Hilco", and together with Gordon, the "Consultants") as liquidating consultants; (b) authorizing the Debtors to close their retail stores and other locations; (c) authorizing the Debtors to conduct store closing sales free and clear of liens pursuant to sections 363(b) and (f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); (d) authorizing the Debtors to enter into a liquidation consulting agreement providing for the liquidation of merchandise inventory and other assets with the Consultants; and (e) granting such other related relief as may be appropriate. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of F. Bruce Giesbrecht ("Giesbrecht Declaration"), attached as Exhibit A, and respectfully represent:

---

[1] The Debtors and the last four digits of their respective tax payer identification numbers are as follows: Ultimate Acquisition Partners, LP (2837) and CC Retail, LLC (7780). The Debtors' address is 321 West 84th Avenue, Suite A, Thornton, Colorado 80260.

{D0195628.1 }

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 327(a), 328 and 363 of title 11 of the Bankruptcy Code, Rules 2002, 2014, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND[2]

2. On January 26, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee, examiner or official committee of unsecured creditors ("Committee") has been appointed in the Debtors' cases.

## RELIEF REQUESTED

5. The Debtors filed their chapter 11 petitions as a result of a variety of negative factors related to their businesses. These factors included a significant loss in their operations for the 11 months ending December 31, 2011, a loss of vendor support in providing goods and services to the Debtors and a loss of liquidity. Subsequent to the Petition Date, the Debtors'

---

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, is set forth in greater detail in the Declaration of F. Bruce Giesbrecht in Support of Chapter 11 Petitions and First Day Pleadings filed on the Petition Date.

management has continued to analyze the Debtors' operations and the options available to the Debtors to maximize the value of their assets for the benefit of their estates. The analysis has included a review of the profitability of the Debtors' stores, the ability of the Debtors to obtain delivery of additional goods post-petition, the position of the Debtors' secured lender General Electric Capital Corporation ("GECC"), the availability of the Debtors' continued use of cash collateral, and customer store traffic in light of the chapter 11 filings. The Debtors were aided in this analysis with the support of their consultants and financial advisors, FTI Consulting, Inc. and Falcon Advisors, Inc.

6. As set forth in the Giesbrecht Declaration, which is incorporated herein in its entirety, the Debtors have determined that an organized sale of their existing inventory in all forty-six (46) of their retail stores, utilizing a "going out of business structure", is in the best interest of their estates and their creditors.. First, the Debtors do not have any debtor-in-possession ("DIP") financing and have not secured any DIP financing. Accordingly, they do not have the requisite funding to operate their businesses as a going concern on a prospective basis. Second, GECC has not agreed to permit the Debtors to use their cash collateral to acquire new inventory for their stores. Third, the Debtors are concerned that the assets will lose value if an immediate liquidation of their assets does not occur because inventory is not being replenished with newer model merchandise. Moreover, delays in the liquidation process could cause the inventory in the closing stores to become unbalanced or out of "season", thus, reducing the value of the Merchandise (as defined below). Fourth, the Debtors are concerned about shrinkage in the retail market environment, thereby further reducing the value of the assets. Commencing the store closing sales (the "Store Closing Sales") expeditiously avoids the risk of inventory "shrink." Finally, the Debtors have analyzed other business models and alternatives short of

liquidation of the assets of the estate and, based thereon, have determined that the highest and best value of the assets of the estates will be achieved for the benefit of their creditors through a liquidation sale. If the Debtors are not able to effectuate a quick and efficient liquidation of their assets, they will lose money and experience a drain on liquidity. The sooner the Debtors' assets are liquidated (and the closing stores' leases are either sold or rejected), the sooner the Debtors will be able maximize the value of the assets for the benefit of all of the creditors of their estates.

7. The Debtors propose engaging in an orderly wind-down of their operations through sales of inventory from each of their store locations, as identified on Exhibit B. Depending on the progress of the sales, the Debtors will close their various stores at various points during the Store Closing Sales, reposition inventory in other stores as needed and seek appropriate orders from the Court authorizing the Debtors to reject their various leases, if a purchaser of the Debtors' leaseholds is not found.

8. In order to maximize the value of the inventory to be included in the Store Closing Sales at the closing stores (the "Merchandise") and the owned furniture, fixtures and equipment in the closing stores (the "Owned FF&E," and together with the Merchandise, the "Liquidation Assets"), the Debtors intend to obtain the assistance of the Consultants who specialize in, among other things, the large scale liquidation of the Liquidation Assets on this type and scale. Through the use of the Consultants, the Debtors will ensure the most feasible, economical, and efficient means of achieving the disposition of the Liquidation Assets.

**THE PROPOSED LIQUIDATING CONSULTANTS, CONSULTING AGREEMENT AND STORE CLOSING SALES**

9. The Debtors propose to commence the Store Closing Sales immediately following the Hearing on this Motion, and thereby stem the losses resulting from the continued operation of the Debtors. The Debtors also seek authority to enter into the consulting agreement (attached as

{D0195628.1 }
2009827
4

Exhibit C and incorporated herein, the "Consulting Agreement") to allow the Consultants to serve as the Debtors' liquidating consultants in conducting the Store Closing Sales in a manner consistent with the Sales Guidelines attached hereto as Exhibit D, which procedures and guidelines are typical of and consistent with those that have been approved in this and other districts nationwide in similar transactions.

10. The Debtors believe that retaining the Consultants to act as the Debtors' liquidation consultants in connection with the conduct of the Store Closing Sales is the best way to maximize the value of the Liquidation Assets. Toward that end, the Debtors request that the Court approve the Consulting Agreement.

11. The Debtors believe that the Consultants are uniquely qualified to assist with the Store Closing Sales because, among other reasons, Gordon has performed appraisals of, and is knowledgeable about, the composition and value of the Debtors' inventory. Additionally, both of the Consultants have expertise in operating and liquidating multi-store electronics retail chains where, as here, the inventory will not be replaced once sold.

12. The Debtors believe that the retention of the Consultants is necessary to assist them in maximizing the value of their assets for the benefit of their estates.

## STORE CLOSING SALES NOTICE

13. Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the terms and conditions of the Store Closing Sales. In furtherance of that goal, the Debtors prepared the notice attached hereto as Exhibit E (the "Store Closing Sales Notice"). The Debtors respectfully request that the form of the Store Closing Sales Notice be approved and that service of the Store Closing Sales Notice be made on or before the second business day after the Hearing on this Motion on: (i) the Office of the United States Trustee; (ii) counsel to GECC; (iii) counsel to the Committee, if one is appointed; (iv) the top 30 creditors of the Debtors'

estates, on a consolidated basis; (v) all parties known to be asserting a lien in the Debtors' Liquidation Assets; (vi) each of the Debtors' landlords for the closing stores; (vii) all state attorneys general in states in which the closing stores are located; (viii) various federal and state tax and environmental authorities, including the Internal Revenue Service and the Environmental Protection Agency; and (ix) all entities requesting notice pursuant to Bankruptcy Rule 2002. The Debtors request that such notice be deemed adequate and sufficient notice as required by the Bankruptcy Rules.

## APPROVAL OF STORE CLOSING SALES UNDER SECTION 363 AND FOR THE SALE OF MERCHANDISE FREE AND CLEAR OF ALL ENCUMBRANCES IS WARRANTED

14. Section 363(b)(1) of the Bankruptcy Code provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate

11 U.S.C. § 363(b)(1); *see also In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (holding that going-out-of-business sales are governed by section 363(b)).

15. To obtain Court approval to use property under section 363(b) of the Bankruptcy Code for the purpose of a store closing sale, the Debtors must articulate a business reason for the proposed action. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147-48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp*. and requiring good faith); *In re Delaware & Hudson Ry. Co*., 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision); *Dai-Icho Kangyo Bank v.*

*Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Cork)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (same).

16. When a valid business justification exists, the law vests the debtor's decision to use its property with a strong presumption "that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11, especially where the debtor is a Delaware corporation) (quotations omitted); *In re Delaware and Hudson Ry. Co.*, 124 B.R. at 176; *accord In re Decora Indus., Inc.*, 2002 WL 32332749 at *3 (D. Del. 2002); *see also In re Integrated Res., Inc.*, 147 B.R. at 656 (parties challenging a debtor's sound business decision must show bad faith, self-interest or gross negligence).

17. Ample business justification exists in these cases to approve the proposed Store Closing Sales. The Debtors, with the assistance of their advisors, have determined to liquidate their businesses by means of the Store Closing Sales as set forth in the Consulting Agreement, and begin liquidating the Liquidation Assets. Time is of the essence to preserve and maximize the value of the Debtors' assets before the Merchandise significantly declines in value, and to reduce on-going administrative expenses. Each of the Debtors' stores contains significant levels of Merchandise that will be included in the Store Closing Sales. The realization of fair value for these assets as promptly as possible will inure to the benefit of all parties in interest. Therefore, the Debtors propose to commence the Store Closing Sales immediately upon Court approval of the Consulting Agreement.

18. Store closing or liquidation sales are a routine occurrence in chapter 11 cases involving retail debtors. *See In re Ames Dept. Stores, Inc.,* 136 B.R. at 359 (holding that "going-out-of-business" sales are an important part of "overriding federal policy requiring [a] Debtor to maximize estate assets"). Bankruptcy courts in this District have approved similar store closing sales. *See, e.g., In re Tweeter Home Entm't Group, Inc.*, Ch. 11 Case No. 07-10787 (NW) (Bankr. D.Del. July 13, 2007) (final order authorizing debtor to continue store closing sales pursuant to store closing agreement); *In re Three A's Holdings, L.L.C.*, Ch. 11 Case No. 06-10886 (BLS) (Bankr. D.Del. Sept. 25, 2006) (order authorizing, among other things, agent to conduct store closing sales); *In re M T S Inc.*, Ch. 11 Case No. 04-10394 (PJW) (Bankr. D. Del, Mar, 2, 2004) (same); *In re Wherehouse Entm't, Inc.*, Ch. 11 Case No. 03-10224 (PJW) (Bankr. D.Del. Feb. 21, 2003) (same); *In re Zany Brainy, Inc.*, Ch. 11 Case No. 01-1749 (MFW) (SLR) (Bankr. D. Del. Oct. 11, 2001) (same).

### THE COURT SHOULD WAIVE COMPLIANCE WITH ANY STATE AND LOCAL LAWS, STATUTES, RULES AND ORDINANCES RESTRICTING STORE CLOSING SALES.

19. Many state and local laws, statutes, rules and ordinances require special and cumbersome licenses, waiting periods, time limits and other procedures for store closing, liquidation or similar sales. By virtue of 28 U.S.C. § 1334, this Court has exclusive jurisdiction over the Debtors' property wherever located. 28 U.S.C. § 1334. In the context of bankruptcy cases, therefore, since creditors receive notice of the proposed sale, as well as opportunity to be heard in this Court, enforcement of such statutes and regulations is redundant and unnecessary.

20. The Bankruptcy Code preempts state and local laws that conflict with its underlying policies. *See Belculfine v. Aloe (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code.' ... '[A] state statute[] cannot place burdens on them

where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd*, 112 F.3d 633 (3d Cir. 1997). While preemption of state law is not always appropriate, *see Baker & Drake, Inc. v. Public Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1353-54 (9th Cir. 1994) (holding that Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure), preemption is appropriate where, as here, the only state laws involved concern economic regulation rather than the protection of public health and safety.[3] *See id*. at 1353 (finding that "federal bankruptcy preemption is more likely. . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety"); *see also In re Scott Housing Sys., Inc.*, 91 B.R. 190, 196-97 (Bankr. S.D. Ga. 1988) (holding that automatic stay under Section 362 is broad and preempts state law except for those laws designed to protect public health and safety).

21. In the instant cases, state and local licensing requirements, time limits or other restrictions on liquidation sales would undermine the fundamental purpose of section 363(b) of the Bankruptcy Code by placing constraints on the Debtors' ability to marshal and maximize estate assets for the benefit of creditors. Accordingly, authorizing the Store Closing Sales without the delays and burdens associated with obtaining various state and local licenses, observing state and local waiting periods or time limits, and/or satisfying any additional requirements with respect to advertising and the like is necessary and appropriate.

22. It is also necessary that any action by any lessor or any federal, state or local agency, department or governmental authority or any other entity to prevent, interfere with or otherwise hinder consummation of the Store Closing Sales or advertisement of such sales be enjoined. *See Missouri v. U.S. Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir. 1981) (same), *cert.*

---

[3] The Debtors will comply with applicable state and local public health and safety laws ("Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").

*denied*, 454 U.S. 1162 (1982) (holding that attempt to enforce state regulations governing liquidation of grain warehouses directly conflicted with bankruptcy court's control over property of debtor's estate and therefore violated automatic stay).

23. The requested waiver is narrowly tailored to facilitate the successful consummation of the Store Closing Sales. The Debtors do not seek a general waiver of all state and local requirements, but only those that apply specifically to liquidation sales. As noted above, the Debtors fully intend to be bound by and comply with all Consumer and Safety Laws, and will require that the Consultants do the same.

24. Similar relief has been granted in other bankruptcy cases in this District. *See, e.g., In re Tweeter Home Entm't Group, Inc*., Ch. 11 Case No. 07-10787 (PM) (Jointly Administered) (Bankr. D. Del, July 13, 2007) (final order authorizing debtor to continue store closing sales pursuant to store closing agreement); *In re Three A's Holdings, L.L.C*., Ch. 11 Case No. 06-10886 (BLS) (Jointly Administered) (Bankr. D. Del. Sept, 25, 2006) (order authorizing, among other things, agent to conduct store closing sales); *In re M T S Inc*., Ch. 11 Case No. 04-10394 (PJW) (Bankr. D. Del. Mar. 2, 2004) (same); *In re Zany Brainy, Inc*., Ch. 11 Case No. 01-1749 (MFW) (Bankr. D. Del. Oct. 11, 2001) (SLR) (same).

**THE COURT SHOULD WAIVE ANY RESTRICTION IN THE LEASES AS UNENFORCEABLE**

25. Certain of the leases governing the premises of the closing stores (the "Leases") may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing, liquidation, or similar sales. Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code. *See, e.g., In re Ames Dep't Stores, Inc*., 136 B.R. at 359 (holding that enforcement of such lease restrictions would "contravene overriding federal policy requiring

debtor to maximize estate assets…"); *In re R. H. Macy and Co., Inc.*, 170 B.R. 69, 73-74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to stay open because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467-68 (Bankr. N.D. Ga. 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in Chapter 11 case where debtor sought to conduct going-out-of-business sale).

26. As such, to the extent that such provisions or restrictions exist in any of the Leases of the closing stores, such landlords may not interfere with or otherwise seek to restrict the Debtors and/or the Consultants from conducting the Store Closing Sales. Accordingly, the Debtors request that the Court authorize the Debtors and/or the Consultants to conduct the Store Closing Sales without interference by any landlords or other persons affected, directly or indirectly, by the Store Closing Sales.

27. Bankruptcy courts in this District have held that restrictive lease provisions affecting store closing sales in chapter 11 cases are unenforceable. *See, e.g., In re Tweeter Home Entm't Group, Inc.*, Ch. 11 Case No. 07-10787 (PJW) (Jointly Administered) (Bankr. D. Del. July 13, 2007) (final order authorizing debtor to continue store closing sales pursuant to store closing agreement); *In re Three A's Holdings, L.L.C.*, Ch. 11 Case No. 06-10886 (RLS) (Jointly Administered) (Bankr. D. Del. Sept. 25, 2006) (order authorizing, among other things, agent to conduct store closing sales); *In re MTS, Inc.*, Ch. 11 Case No. 04-10394 (BLS) (Bankr. D. Del. Mar. 2, 2004) (same); *In re Wherehouse Entm't, Inc.*, Ch. 11 Case No. 03-10024 (PJW) (Bankr.

D. Del. Feb. 21, 2003) (same); *In re Zany Brainy, Inc.*, Ch. 11 Case No. 01-1749 (MFW) (opinion by Robinson, D.J.) (Bankr. D. Del. Oct. 11, 2001) (same); *In re Just For Feet, Inc.*, Case No. 99-4110 (RRM) (Bankr. D. Del. Nov. 26, 1999) (same); *In re London Fog, Inc.*, Case No. 99-3446 (PJW) (Bankr. D. Del. Oct. 7, 1999) (same).

**A SALE OF LIQUIDATION ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES IS WARRANTED**

28.  The Debtors request approval to sell the Liquidation Assets subject to the Consulting Agreement, on a final "as is" basis, free and clear of any and all liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code. A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

- applicable non-bankruptcy law permits sale of such property free and clear of such interest;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

- such interest is in bona fide dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met). GECC, which is secured by, among other things, the Liquidation Assets, has consented to the sale of the Liquidation Assets. With respect to any other party asserting a lien, claim, or encumbrance against the Merchandise or the Owned FF&E, the Debtors anticipate that they will be able to satisfy one or more of the

conditions set forth in section 363(f). In connection with the sale of the Liquidation Assets pursuant to the terms and conditions of the Consulting Agreement, the Debtors propose that any liens, claims, and encumbrances asserted against the Merchandise be transferred to and attach to the amounts payable to the Debtors under the Consulting Agreement, in the same order of priority and subject to the rights, claims, defenses, and objections, if any, of all parties with respect thereto, provided that the Debtors' share of the proceeds of the Store Closing Sales shall be applied in accordance with any interim or final orders approving DIP financing herein.

## REQUEST FOR WAIVER OF STAY

29. In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of any order approving the relief requested in this Motion. Pursuant to Bankruptcy Rule 6004(h), an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors are facing significant liquidity constraints and the continued delay in selling the Liquidation Assets will further decrease the value of the Liquidation Assets. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply.

## REQUEST FOR AUTHORITY TO PAY STAY INCENTIVES TO KEY EMPLOYEES

30. Because the Debtors will no longer operate as a going concern, the Debtors anticipate a noticeable increase in employee turnover. This turnover threatens the Debtors' ability to implement the Store Closing Sales, liquidate the Debtors' businesses and maximize value for their estates and their creditors. Thus, to successfully complete the liquidation of the Debtors' remaining operations effectively and efficiently, the Debtors determined that formulating an incentive bonus plan was in the best interest of their estates and creditors. Such a plan would help ensure that employees who are essential to the

liquidation process and critical to managing the effective and timely liquidation of the Debtors' stores are retained and appropriately motivated to maximize value (the "Key Employees"). The Key Employees include the Debtors' retail store managers, assistant managers and other employees who have oversight responsibilities for the Debtors' stores. Importantly, none of the Key Employees are Insiders of the Debtors as that term is defined in section 101 of the Bankruptcy Code.

31. Courts have found that a debtor's use of reasonable performance bonuses and other incentives for employees is a valid exercise of a debtor's business judgment. *See, e.g., In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D.Ariz. 1994) (noting that it is the proper use of a debtor's business judgment to propose bonuses for employees who helped propel the debtor successfully through the bankruptcy process); *In re Interco Inc.*, 128 B.R. 229, 234 (Bankr. E.D.Mo. 1991) (stating that a debtor's business judgment was controlling in the approval of a "performance/retention program").

32. More importantly, perhaps, even after the recent amendments to the Bankruptcy Code, courts have approved employee bonus programs as valid exercises of business judgment. *See, e.g., In re Blue Water Automotive Systems, Inc.*, Case No. 08-43196 (McIvor, J.) (Bankr. E.D. Mich. May 12, 2008) (approving incentive payments to employees in connection with a potential sale of assets); *In re Nellson Nutraceutical, Inc.*, 68 B.R. 787, 801 (Bankr. D. Del. 2007) (Bankruptcy Code section 503(c)(1) does not restrict incentive payments to noninsider employees); *In re Dana Corp.*, 358 B.R. 567 (Lifland, J.) (Bankr. S.D.N.Y. Nov. 30, 2006) (approving management incentive plan under the business judgment standard), *appeal docketed* Case No. 07-CV-01888 (PKC) (S.D.N.Y. Mar. 5, 2007) (appeal dismissed by consent of parties); *In re Global Home Prods., LLC,* 369 B.R.

778 (Bankr. D. Del. 2007) (approving management incentive program for benefit of nine employees of the debtors provided that such employees fulfilled their obligations to the debtors through the closing of a sale of substantially all of the Debtors' assets).

33. Accordingly, the Debtors request authority from the Court to pay mutually agreeable incentive and retention bonuses to Key Employees, of up to ten percent (10%) of the Key Employees' annual base salary (the "Incentive Bonus"). The Debtors believe that their ability to pay the Incentive Bonus is crucial in order to retain these critical store employees during the liquidation of the Debtors' business and to ensure an orderly liquidation of the Debtors' stores.

## NOTICE

34. Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel to GECC; (iii) counsel to the Committee, if any; (iv) the top 30 creditors; (v) all parties known to be asserting a lien in the Debtors' Liquidation Assets; (vi) each of the Debtors' landlords for the closing stores; (vii) all state attorneys general in states in which the closing stores are located; (viii) various federal and state tax and environmental authorities, including the Internal Revenue Service and the Environmental Protection Agency; and (ix) all entities having filed a request for the notice pursuant to Bankruptcy Rule 2002 in these chapter 11 cases. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

35. No previous application for the relief requested herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an Order substantially in the form attached hereto as Exhibit F granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: February 4, 2011
Wilmington, Delaware

**CAMPBELL & LEVINE, LLC**

By:/s/ *Mark T. Hurford*
Mark T. Hurford (DE No. 3299)
Kathleen Campbell Davis (DE No. 4229)
800 N. King St., Ste. 300
Wilmington, DE 19801
(302) 426-1900
(302) 426-9947 (facsimile)
mhurford@camlev.com
kdavis@camlev.com

and

**JAFFE, RAITT, HEUER & WEISS, P.C.**

Jay L. Welford (P34471)
Judith Greenstone Miller (P29208)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
(248) 351-3082 (facsimile)
jwelford@jaffelaw.com
jmiller@jaffelaw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*