Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re

ULTIMATE ACQUISITION,
PARTNERS, LP, et al.,[1]

    Debtors.
_____/

Chapter 11
Case No. 11-10245 (MFW)

Jointly Administered

## DECLARATION OF F. BRUCE GIESBRECHT IN SUPPORT OF MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER APPROVING STORE LIQUIDATING CONSULTANT, CONSULTANT AGREEMENT, STORE CLOSING SALES AND RELATED RELIEF

F. Bruce Giesbrecht, being duly sworn, deposes as follows:

1. I am the Chief Executive Officer and Secretary of Ultimate Acquisition Partners, LP ("UAP"), a Delaware limited partnership, and the President of CC Retail, LLC ("CC Retail"), a Delaware limited liability company (UA and CC Retail are hereinafter collectively referred to as the "Debtors"). I am personally familiar with and competent to testify to the facts set forth in this Declaration. If called as a witness, I could and would testify consistent with the representations set forth herein.

2. I submit this Declaration in support of the Motion of Debtors and Debtors in Possession for an Order Approving Store Liquidating Consultants, Consultant Agreement, Store Closing Sales and Related Relief ("Motion") and the Ex Parte Motion of the Debtors to Shorten Notice and set Hearing on an Expedited Basis Regarding the Motion ("Ex Parte Motion"). By the Motion, the Debtors seek entry of an order: (a) authorizing the Debtors to retain Gordon Brothers Retail Partners, LLC ("Gordon") and Hilco Merchant Resources, LLC ("Hilco", and

---

[1] The Debtors and the last four digits of their respective tax payer identification numbers are as follows: Ultimate Acquisition Partners, LP (2837) and CC Retail, LLC (7780). The Debtors' address is 321 West 84th Avenue, Suite A, Thornton, Colorado 80260.

together with Gordon, the "Consultants") as liquidating consultants; (b) authorizing the Debtors to close their retail stores and other locations; (c) authorizing the Debtors to conduct store closing sales free and clear of liens pursuant to sections 363(b) and (f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); (d) authorizing the Debtors to enter into a liquidation consulting agreement providing for the liquidation of merchandise inventory and other assets with the Consultants; and (e) granting such other related relief as may be appropriate. By the Ex Parte Motion, the Debtors seek an expedited hearing, on or before February 11, 2001, with respect to the Motion.

3. I am familiar with the Debtors' day to day business operations and affairs, as well as their books and records.

4. As a result of my review of this information, I believe that it is essential and in the best interests of the Debtors' estates that the Debtors be authorized to immediately proceed to conduct Store Closing Sales[2] as requested in the Motion because, among other reasons, any delay in commencing the Store Closing Sales would diminish the value of the assets to the detriment of the Debtors' estates and their creditors.

5. Prior to the commencement of these bankruptcy cases, the Debtors faced a variety of negative factors related to their businesses including: (i) a significant loss in their operations for the eleven (11) months ending December 31, 2010, (ii) a loss of vendor support in providing goods and services to the Debtors, and (iii) a loss of liquidity.

6. Subsequent to the commencement of these bankruptcy cases on January 26, 2001 (the "Petition Date"), the Debtors' management, including myself, continued to analyze the Debtors' operations and the options available to the Debtors to maximize the value of their assets

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion.

2009483.1

for the benefit of their estates. The Debtors were aided in their analysis by their consultants and financial advisors, including FTI Consulting, Inc. and Falcon Advisors, Inc.

7. The analysis included, among other things, a review of the profitability of the Debtors' stores both before and after the Petition Date, the ability of the Debtors to obtain delivery of additional goods and services post-petition, the position of the Debtors' secured lender General Electric Capital Corporation ("GECC"), the availability of the Debtors' continued use of cash collateral, and customer store traffic in light of the chapter 11 filings.

8. Based on this analysis, I believe that an organized liquidation sale of the Debtors' existing inventory in all forty-six (46) of their retail stores, utilizing a "going out of business structure", is in the best interest of the Debtors' estates and their creditors for the following reasons:

   a) The Debtors do not have any debtor-in-possession ("DIP") financing and have not secured any DIP financing. Additionally, GECC has not agreed to permit the Debtors to use their cash collateral to acquire new inventory for the Debtors' retail stores. Thus, the Debtors do not have the requisite funding to operate their businesses as a going concern on a prospective basis;

   b) The Debtors' assets will likely lose value absent an immediate liquidation because inventory is not being replenished with newer model merchandise. As the Debtors' competitors obtain such newer model merchandise, the value of the Debtors' current merchandise will decrease;

   c) Shrinkage in the retail market environment would likely further reduce the value of the assets. Commencing the Store Closing Sales expeditiously avoids the risk of inventory "shrink";

d) Other business models and alternatives short of liquidation of the assets of the estates likely would not result in a greater return to the Debtors' estates and their creditors;

e) Absent a quick and efficient liquidation of their assets, the Debtors will continue to lose money and experience a drain on liquidity and declining value of their assets;

f) The sooner the Debtors' assets are liquidated (and the closing stores' leases are either sold or rejected), the sooner the Debtors will be able to eliminate the continued accrual of administrative expenses against their estates and maximize the value of their assets.

9. The retention of the Consultants who specialize in, among other things, the large scale liquidation of assets similar to the Debtors' assets will ensure the most feasible, economical and efficient means of liquidating such assets, thereby maximizing the value of same.

10. I believe that the Consultants are uniquely qualified to assist with the Store Closing Sales because, among other reasons, Gordon has performed appraisals of, and is knowledgeable about, the composition and value of the Debtors' inventory. Additionally, I understand that the Consultants have expertise in operating and liquidating multi-store electronics retail chains where, as here, the inventory will not be replaced once sold.

11. In order to motivate and retain certain key employees (*i.e.* retail store managers, assistant managers and other employees who have oversight responsibilities in the Debtors' retail stores) (collectively, the "Key Employees"), I, along with my advisors and consultants, created the incentive bonuses described in the Motion (the "Incentive Bonus Plan").

12. The Incentive Bonus Plan is an essential component of the Store Closing Sales in that it will help ensure that those employees who are essential to the liquidation process are retained and properly motivated to maximize the value of the Debtors' assets.

13. Each of the Key Employees have the necessary skill and experience to implement the Store Closing Sales as discussed in the Motion and are critical to the successful completion thereof.

14. I am concerned that many of the Key Employees may leave the company prior to the completion of the Store Closing Sales absent approval of the Incentive Bonus Plan.

15. I believe that the cost of hiring or promoting and training other employees or individuals to replace the Key Employees, if such Key Employees should leave, will be significantly higher than the proposed payments under the Incentive Bonus Plan. The loss of knowledge alone would likely impair the Debtors' current efforts.

2009483.1

## CONCLUSION

For the reasons described herein and in the Motion, I believe that the best interests of the Debtors and their estates are served by granting the relief requested in the Motion and authorizing the Debtors to immediately proceed to conduct the Store Closing Sales consistent with the procedures, and with the assistance of the Consultants, as set forth in the Motion.

Dated: February 4, 2011

                                          F. BRUCE GIESBRECHT
                                          CEO and Secretary of UAP and
                                          President of CC Retail