# Exhibit C

February 4, 2011

Ultimate Acquisition Partners, L.P.
CC Retail LLC
321 West 84th Avenue, Suite 1
Thornton, CO 80260
Attention: Mark Wattles

Re: Store Closing Project

Ladies and Gentlemen:

This letter shall serve as the agreement of the joint venture of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (together, "Consultant") and Ultimate Acquisition Partners, L.P. and CC Retail LLC and their affiliated debtors and debtors-in-possession (collectively, "Merchant") pursuant to which Consultant shall serve as the exclusive consultant to Merchant in connection with a "going out of business," "store closing," or other mutually agreed upon themed sale ("Sale") at Merchant's forty-six (46) retail stores identified on Exhibit A (the "Stores" and each individually a "Store").

1. **RETENTION**
Merchant hereby retains Consultant as its exclusive, independent consultant to conduct the Sale at the Stores during the Sale Term, and in connection therewith, Consultant shall, throughout the Sale Term:

| | |
|---|---|
| (i) | Recommend and implement appropriate point-of-purchase, point-of-sale, presentation and external and internal advertising and signage necessary to effectively sell all of the Merchandise in accordance with a "going out of business," "store closing" or other mutually agreed upon themed sale. |
| (ii) | Provide qualified supervisors with respect to the Stores, to oversee the conduct of the Sale, and to oversee the Sale process in the Stores. |
| (iii) | Recommend and implement expense savings strategies with respect to minimizing the Operating Expenses of the Sale and reducing corporate overhead. |
| (iii) | Maintain focused and constant communication with Store-level employees and managers to keep them abreast of strategy and timing and to properly effect Store-level communication by Merchant's employees to customers and others about the Sale. |
| (iv) | Establish and provide oversight of accounting functions for the Sale, including evaluation of sales of Merchandise by category, sales reporting and expense monitoring. |
| (v) | Coordinate with Merchant so that the operation of the Stores is being properly maintained including ongoing customer service and housekeeping activities. |
| (vi) | Recommend appropriate staffing levels for the Stores and appropriate bonus and/or incentive programs for Store employees. |
| (vii) | Provide recommendations for loss prevention initiatives. |

## 2. SALE TERM; VACATING STORES

The "Sale Term" with respect to each respective Store shall commence on the first day following entry of the "Approval Order" (but in no event later than February 12, 2011) ("Sale Commencement Date") and shall terminate no later than April 15, 2011 ("Sale Termination Date"); provided however that Consultant may from time to time establish an earlier "Sale Termination Date" with respect to any one or more Stores (on a per Store basis) upon five (5) days prior notice to Merchant. Upon the conclusion of the Sale Term at each Store, Consultant shall leave such Store in broom clean condition, subject to Consultant's right pursuant to "FF&E" below to abandon in a neat and orderly manner all unsold FF&E.

## 3. EXPENSES

(A) All expenses incident to the conduct of the Sale and the operation of the Stores during the Sale Term shall be borne by Merchant, including without limitation the Operating Expenses and the Consultant Controlled Expenses (in each case as defined below).

(B) Consultant will advance funds for the "Consultant Controlled Expenses" (defined as all Sale advertising, promotion, signage, signwalkers, Consultant's Supervisor's fees/deferred fees/expenses, and miscellaneous, home office, due diligence, and reasonable and documented legal expenses); and Merchant shall reimburse Consultant for all such Consultant Controlled Expenses in connection with each weekly reconciliation contemplated by Section 5(B) below upon presentation of reasonable documentation for such actually-incurred expenses. Merchant shall be obligated to reimburse Consultant for the Consultant Controlled Expenses in addition to all fees, commissions, and other reimbursements contemplated by this Agreement; provided that the parties shall produce a mutually acceptable budget no later than February 9, 2011 and Consultant Controlled Expenses shall not exceed the amount of such expenses set forth in that budget without the mutual consent of Merchant and Consultant.

## 4. CONSULTANT COMPENSATION

(A) As used herein, the following terms shall have the following meanings:
    (i) "Merchandise" shall mean all saleable inventory sold in the Stores during the Sale Term.

    (ii) "Gross Proceeds" shall mean the gross proceeds of all sales of Merchandise, warranties, and services made in the Stores during the Sale Term, net only of sales, excise and gross receipts taxes.

    (iii) "Operating Expenses" shall mean the following:
        (a) actual Store-level occupancy expenses, on a per Store and per diem (during the Sale Term) basis, but not to exceed the per Store per diem amount set forth on Exhibit B hereto.
        (b) payroll for Store-level employees used in connection with the Sale for actual days/hours worked during the Sale Term.
        (c) amounts payable for benefits for Store-level employees used in connection with the Sale for actual days/hours worked during the Sale Term (including FICA, unemployment taxes, worker's compensation, and health care insurance and paid time-off benefits that accrue during the Sale Term in connection with the Sale); provided that such amounts shall not exceed 17% of the aggregate base payroll for Store-level employees used in connection with the Sale for actual days/hours worked during the Sale Term.
        (d) retention bonuses paid to Store-level employees used in connection with the Sale not to exceed 10% of a Store-level employee's annual base salary.
        (e) actually incurred Consultant Controlled Expenses.
        (f) an amount equal to twenty-five thousand dollars ($25,000) per week during the Sale Term (representing an estimate of central services to be provided by Merchant to Consultant in

connection with the Sale such as distribution center payroll, MIS support, POS support and other corporate services).

        (g) Store-level local, leased line, satellite broadband connections and long distance telephone expenses incurred in the conduct of the Sale.

        (h) credit card, bank card processing and other fees, chargebacks, discounts, bad debt expense, and any other bank charges in connection with the Sale.

        (i) Store-level security costs (including without limitation personnel and alarm services in the Stores as well as cash shortfalls in registers).

        (j) a pro-rata portion of Merchant's insurance attributable to the Merchandise.

        (k) costs relating to the processing, transfer and consolidation of Merchandise between and among Stores, including delivery and freight costs.

        (l) costs for additional Store-level supplies.

        (m) Store-level postage, courier, and overnight mail charges.

        (n) Store-level housekeeping, cleaning services, and trash removal.

There shall be no double-counting of Operating Expenses that fall into more than one category as set forth above, and to the extent an Operating Expense falls into a category with a cap, the lowest cap shall apply.

    (iv)    "Net Proceeds" shall mean Gross Proceeds minus Operating Expenses and the Base Fee.

    (iv)    "Cost Value" of the Merchandise shall be determined with reference to Merchant's books and records maintained in the ordinary course, consistent with historic periods, and consistent with the information provided by Merchant to Consultant in connection with Consultant's due diligence review of this transaction.

    (v)    "Retail Value" shall be determined using the gross rings method with reference to the lowest of the ticketed, shelf, PLU, or file price. For purposes of determining "gross rings", GBRP and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within the Store. Register receipts shall show for each item sold the retail price for such item and the markdown or discount granted by Consultant in connection with such sale. All such records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice. In addition, there shall be an "inferred shrink" adjustment of 1% applied to the gross rings calculation. Thus, for example, if the total gross register receipts shown as part of gross rings equal $1,000, excluding sales and similar taxes (that $1,000 value would be Gross Proceeds), and the total markdowns/discounts granted by Consultant shown as part of gross rings equals $600, then the Retail Value (e.g., beginning merchandise level) would equal $1,000+$600 ($1,600) plus 1% for inferred shrink, or $1,616.

    (vi)    "Aggregate Recovery Percentage" shall mean the Net Proceeds divided by the aggregate Cost Value of all Merchandise.

(B)    Merchant shall pay Consultant a "Base Fee" equal to three-quarters of one percent (0.75%) of the Gross Proceeds. Merchant shall pay the Base Fee weekly (in connection with each weekly reconciliation contemplated by Section 5(B) below) on account of sales made during the prior week (or partial week in the case of the first and last weekly reconciliation).

(C)    In addition to the Base Fee, Merchant shall, in connection with the Final Reconciliation, pay Consultant an "Incentive Fee" calculated, on a cumulative basis, based upon the following increments:

3

| Aggregate Recovery Percentage | Incentive Fee |
|---|---|
| Below 77.5% | No Incentive Fee |
| 77.5% to 78.25% | Three quarters of one percent (0.75%) of the Cost Value of the Merchandise. |
| 78.25% to 79.25% | Forty percent (40%) of all incremental Net Proceeds which are in excess of an amount equal to the dollar amount represented by a seventy-eight and one-quarter percent (78.25%) Aggregate Recovery Percentage, but which are less than an amount equal to the dollar amount represented by a seventy-nine and one-quarter percent (79.25%) Aggregate Recovery Percentage. |
| 79.25% and Above | Twenty percent (20%) of all Net Proceeds which are in excess of an amount equal to the dollar amount represented by a seventy-nine and one-quarter percent (79.25%) Aggregate Recovery Percentage. |

For example, assuming: (a) $86.5mm of Merchandise at Cost Value; (b) Gross Proceeds of $91.5mm; and (c) aggregate Operating Expenses of $20.0mm; then:
   (i)    the "Net Proceeds" would be $70,813,750.
   (ii)   the "Aggregate Recovery Percentage" would be 81.87% ($70,813,750/$86,500,000).
   (iii)  the dollar amount represented by a seventy-eight and one-quarter percent (78.25%) Aggregate Recovery Percentage would be $67,686,250.
   (iv)   the dollar amount represented by a seventy-nine and one-quarter percent (79.25%) Aggregate Recovery Percentage would be $68,551,250.
   (v)    Consultant would earn a "Base Fee" of $686,250 (0.75%*$91.5mm).
   (vi)   Consultant would earn an Incentive Fee of $1,447,250, calculated as the sum of:
      a. 0.75% of $86.5mm or $648,750; plus
      b. 40% of $865,000 or $346,000 (representing 40% of the incremental $865,00 of Net Proceeds between $67,686,250 and $68,551,250; plus
      c. 20% of $2,262,500 or $452,500 (representing 20% of the incremental $2,262,500 of Net Proceeds which are in excess of $68,551,250.
   (vii)  Consultant's total Fee (Base Fee plus Incentive Fee) would be $2,133,500.

Merchant expressly acknowledges to Consultant that it understands that the Aggregate Recovery Percentage performance hurdles and the Incentive Fee formulations have been established based upon the parties' shared expectation that (i) the aggregate Cost Value of the Merchandise included in the Sale shall be eighty-six million, five hundred thousand dollars ($86,500,000); (ii) the Cost Value-to-Retail Value of the Merchandise included in the Sale shall be not greater than sixty-four and one quarter percent (64.25%); and (iii) Merchant will accept Consultant's recommendations concerning the operations of Sale. In the event that upon completion of the Final Reconciliation it is determined that the foregoing expectations were not materially accurate, to the detriment of the Consultant, the parties shall meet in good faith to negotiate an equitable adjustment to the Incentive Fee/Incentive Fee formulation set forth above (and if the parties are unable to negotiate such an adjustment, the Incentive Fee (which shall be in addition to the Base Fee) shall be fixed at three-quarters of one percent (0.75%) of Gross Proceeds.

5. **CONDUCT OF SALE; OTHER SALE MATTERS**
(A)    Merchant shall have control over the personnel in the Stores and shall handle the cash, debit and charge card payments for all Merchandise sold during the Sale Term in accordance with Merchant's normal cash management procedures, subject to Consultant's right to audit any such items.

4

(B)     The parties will meet on each Wednesday during the Sale Term to review any Sale matters reasonably requested by either party; and all amounts payable or reimbursable to Consultant for the prior week (or the partial week in the case of the first and last weeks) shall be reconciled and paid immediately thereafter (including without limitation payment by Merchant on account of the Base Fee, any FF&E Commission, and reimbursement by the Merchant of all reimbursable Consultant Controlled Expenses and/or FF&E Expenses). No later than thirty (30) days following the end of the Sale, the parties shall complete a final reconciliation and settlement of all amounts contemplated by this Agreement ("Final Reconciliation"), including without limitation a final determination and payment of (i) any remaining reimbursements due to Consultant; (ii) any remaining amounts due to Consultant on account of the Base Fee; (iii) amounts (if any) due to Consultant on account of the Incentive Fee; (iv) amounts due to Consultant on account of the FF&E Commission. From time to time upon request, each party shall prepare and deliver to the other party such other reports as either party may reasonably request. Each party to this Agreement shall, at all times during the Sale Term and during the one (1) year period thereafter, provide the other with access to all information, books and records relating to the Sale and to this Agreement. All records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(C)     Merchant shall collect all sales taxes associated with the sale of Merchandise during the Sale Term, and Merchant shall be solely responsible for reporting and paying the same to the appropriate taxing authorities in accordance with applicable law.

(D)     Each of Consultant and Merchant shall comply with all federal, state and local laws, rules and regulations applicable to them in connection with the transactions contemplated by this Agreement (subject to any exemptions pursuant to the Approval Order).

(E)     Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the net recovery from the Sale, Merchant expressly acknowledges that Consultant is not guaranteeing the results of the Sale.

(F)     Merchant acknowledges that the parties are not conducting an inventory of the merchandise to be included in the Sale, and that Consultant has made no independent assessment of the beginning levels of such merchandise, and Consultant shall not bear any liability for shrink or other loss to any merchandise.

(G)     All sales of Merchandise in the Stores during the Sale shall be made in the name, and on behalf, of Merchant. All such sales shall be "final sales" and "as is," and all advertisements and sales receipts will reflect the same.

(H)     The Sale will be advertised as a "going out of business," "store closing" or other mutually agreed upon themed sale; and Merchant shall provide Consultant with the right to use signs and internal and external banners and signwalkers reflecting this message without interruption by any person.

(I)     In each case solely for purposes in furtherance of the Sale, Merchant shall provide to Consultant, at no cost to Consultant, with: (i) the right of access to the Stores; (ii) central and distribution center services ordinarily provided to the Stores by Merchant; (iii) the use of Merchant's employees (in quantities consistent with historical periods); and (iv) all Store-level assets of the Merchant and the Stores (including, but not limited to, trade names, logos, customer lists (including email lists and internet/social media access), all credit card facilities, bank accounts, computer hardware and software, and furniture, fixtures and equipment).

## 6. FF&E

Promptly following the Sale Commencement Date, Merchant shall inform Consultant of those items of furniture, fixtures, and equipment located at the Stores which are not to be sold (because Merchant does not have the right to sell such items, because Merchant wishes to retain such items for itself, or otherwise) (collectively, "Retained FF&E"). With respect to all furniture, fixtures, and equipment located at the Stores as of the Sale Commencement Date which is not Retained FF&E (collectively the "FF&E"), Consultant shall have the right to sell such FF&E during the Sale Term on a commission basis equal to twenty percent (20%) of the gross proceeds of FF&E net only of sales tax ("FF&E Commission"). Merchant shall reimburse Consultant for its reasonable sale expenses associated with the sale of FF&E, not to exceed the amount shown on an FF&E expense budget to be mutually and reasonably agreed to by the parties promptly after the identification of the Retained FF&E ("FF&E Expenses"). In lieu of such commission arrangement for the sale of FF&E, Consultant and Merchant may mutually agree upon an FF&E guarantee structure. Consultant shall have the right to abandon any unsold FF&E at the Stores at the conclusion of the Sale Term without liability to Merchant or any third party (and Consultant shall have no responsibility with respect to the Retained FF&E).

## 7. INSURANCE; RISK OF LOSS

During the Sale Term: (a) Merchant shall maintain (at its expense) insurance with respect to the Merchandise in amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, and (b) each of Merchant and Consultant shall maintain (at each party's respective expense) comprehensive liability insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Each party shall be added as an additional insured on all such insurance of the other party, all such insurance shall be non-cancelable and non-changeable except upon 30 days' prior written notice to the other party, and each party shall provide the other with certificates of all such insurance prior to the commencement of the Sale.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that (i) Consultant shall not be deemed to be in possession or control of the Stores or the Merchandise or other assets located therein or associated therewith, or of Merchant's employees located at the Stores, and (ii) Consultant does not assume any of Merchant's obligations or liabilities with respect to any of the matters addressed in subsection (i) above, except to the extent any such claim arises from the gross negligence, willful misconduct or unlawful acts of Consultant or its agents and representatives.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Merchant shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores, and Merchandise sold in the Stores, before, during and after the Sale Term, except to the extent any such claim arises from the gross negligence, willful misconduct or unlawful acts of Consultant or its agents and representatives.

## 8. INDEMNIFICATION

(A) Consultant shall indemnify and hold each Merchant and each Merchant's affiliates, and their respective officers, directors, managers, general partners, employees, consultants, and independent contractors (collectively, "Merchant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

(i) Consultant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii) any harassment or any other unlawful treatment of any employees or agents of Merchant by Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives; or

(iii) the gross negligence, willful misconduct or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, consultants, independent contractors or representatives.

(B) Merchant shall indemnify and hold Consultant, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Consultant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

(i) Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii) any claims by any party engaged by Merchant as an employee or independent contractor arising out of such engagement, except where due to the gross negligence, willful misconduct or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives;

(iii) any consumer warranty or products liability claims relating to any Merchandise; and/or

(iv) the gross negligence, willful misconduct or unlawful acts of Merchant, its affiliates or their respective officers, directors, employees, agents, consultants (other than Consultant's) independent contractors or representatives.

## 9. CERTAIN BANKRUPTCY MATTERS

(A) Merchant shall, as soon as practicable following execution of this Agreement, file a motion seeking to obtain an order from the United States Bankruptcy Court for the District of Delaware approving this Agreement on the terms set forth herein ("Approval Order"). The Approval Order shall contain provisions reasonably acceptable to Consultant.

(B) The parties acknowledge that Consultant intends to take certain actions in preparation for the Sale during the period commencing on or about February 5, 2011 through the date of the entry of the Approval Order; and so long as the Approval Order is eventually entered on or before February 12, 2011, the Sale Term for all purposes under this Agreement shall be deemed to have commenced on February 5, 2011. If the Approval Order is not entered on or before February 12, 2011, Consultant shall have the option to terminate this Agreement without penalty.

(C) Consultant hereby discloses that Gordon Brothers Asset Advisors, LLC, an affiliate of Gordon Brothers Retail Partners, LLC, provided an appraisal to GE Corporate Financial Services with respect to Merchant's merchandise, most recently on or about October 29, 2010.

## 10. MISCELLANOUS

This Agreement constitutes the entire agreement between the parties with respect to the matters contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto. This Agreement may not be modified except in a written instrument executed by each of the parties hereto. No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. The failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder. Unless expressly set forth herein to the contrary, to the extent that either party's consent is required/requested hereunder, such consent shall not be unreasonably withheld or delayed. This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; provided, however, that this Agreement may not be assigned by either party without the prior written consent of the other. Written notices contemplated by this Agreement shall be sent by email (i) if to Merchant c/o Bruce Giesbrecht at bruce.giesbrecht@ulte.com; and (ii) if to Consultant c/o Michael Chartock at mchartock@gordonbrothers.com and to Joseph Malfitano at jmalfitano@hilcotrading.com.

Very truly yours,
Gordon Brothers Retail Partners, LLC
Hilco Merchant Resources, LLC

By: _____
Print Name and Title:
Robert Grosskopf
Principal & Managing Director
Gordon Brothers Group

Agreed and Accepted:
**ULTIMATE ACQUISITION PARTNERS, L.P.**
**and its affiliated debtors and debtors-in-possession**

By: _____
Print Name and Title:
F Bruce Giesbrecht  CEO

**CC RETAIL, LLC**
**and its affiliated debtors and debtors-in-possession**

By: _____
Print Name and Title:
F Bruce Giesbrecht  Pres

8

**Exhibit A**
**Ultimate Electronics**
Store List

| Store No. | Store | Address | City | State | Zip Code | Telephone No. | Square Feet |
|---|---|---|---|---|---|---|---|
| 101 | Flatiron Crossing | 51 Flat Iron Circle #1122 | Broomfield | CO | 80021 | (303) 425-6700 | 30,391 |
| 102 | University Park | 3909 East Evans Ave #B | Denver | CO | 80210 | (303) 759-5401 | 19,392 |
| 103 | Park Meadows | 9657 E County Line Rd | Englewood | CO | 80112 | (303) 754-0450 | 41,250 |
| 104 | Chanson Plaza | 8196 W Bowles Ave | Littleton | CO | 80123 | (303) 979-8900 | 39,074 |
| 105 | Denver West | 14391 W Colfax Av | Lakewood | CO | 80401 | (303) 277-9299 | 40,371 |
| 106 | Boulder | 1955 28th St | Boulder | CO | 80301 | (303) 442-3600 | 35,000 |
| 107 | Thornton | 321 W 84th Ave Ste C | Thornton | CO | 80260 | (303) 657-5880 | 39,216 |
| 110 | Fort Collins | 4357 Corbett Drive | Ft Collins | CO | 80525 | (970) 223-3666 | 24,000 |
| 111 | Colorado Springs No | 7207 N Academy Blvd | Colorado Springs | CO | 80920 | (719) 278-3898 | 34,800 |
| 601 | Tulsa | 10021 E 71st St S | Tulsa | OK | 74133 | (918) 250-3664 | 50,480 |
| 602 | OKC I-240 | 515 SW 74th St | Oklahoma City | OK | 73139 | (405) 644-4141 | 37,272 |
| 603 | Quail Springs | 2120 W Memorial Rd | Oklahoma City | OK | 73134 | (405) 753-9525 | 33,085 |
| 1501 | Bradley Fair | 1800 N Rock Rd Ste 120 | Wichita | KS | 67206 | (316) 631-1251 | 29,500 |
| 301 | Pavilions at San Mateo (Albuquerque) | 4700 Cutler Ave | Albuquerque | NM | 87110 | (505) 884-3005 | 36,926 |
| 1003 | Chandler Pavilions | 845 N 54th St | Chandler | AZ | 85226 | (480) 496-8834 | 33,487 |
| 1004 | Arrowhead | 17510 N 75th Ave | Glendale | AZ | 85308 | (623) 776-0455 | 34,827 |
| 1005 | Chandler Festival | 2820 W Chandler Blvd | Chandler | AZ | 85224 | (480) 899-5130 | 32,241 |
| 1006 | Northsight Village (Scottsdale) | 15020 N Northsight Blvd | Scottsdale | AZ | 85260 | (480) 951-4960 | 34,277 |
| 1007 | Mesa Spectrum | 1655 S Stapley Dr | Mesa | AZ | 85204 | (480) 507-2880 | 33,948 |
| 1008 | Desert Ridge | 21001 N Tatum Blvd Ste 26 | Phoenix | AZ | 85050 | (480) 538-0801 | 34,195 |
| 401 | Rainbow Plaza | 741 S Rainbow Blvd | Las Vegas | NV | 89145 | (702) 258-8800 | 31,558 |
| 402 | Tropicana | 2555 E Tropicana Ave | Las Vegas | NV | 89121 | (702) 456-8800 | 33,000 |
| 702 | Burnsville Plaza | 14232 Burnhaven Dr | Burnsville | MN | 55306 | (952) 435-8933 | 14,456 |
| 703 | Tamarack Bus Campus (Woodbury) | 8401 Tamarack Rd | Woodbury | MN | 55125 | (651) 730-4378 | 36,253 |
| 704 | Sportmart Plaza (Minnetonka) | 12324 Wayzata Blvd | Minnetonka | MN | 55305 | (952) 546-4040 | 15,000 |
| 706 | Roseville | 1723 W County Rd B2 | Roseville | MN | 55113 | (651) 636-3686 | 17,393 |
| 707 | Centennial Lakes (Edina) | 7435 France Ave S | Edina | MN | 55435 | (952) 830-0010 | 31,830 |
| 709 | Shoppes at Arbor Lake (Maple Grove) | 12201 Elm Creek Boulevard | Maple Grove | MN | 55369 | (763) 420-5983 | 32,373 |
| 1101 | Crossings at Mid Rivers | 301 Costco Way | St Peters | MO | 63376 | (636) 278-8223 | 33,305 |
| 1102 | Gravois Bluffs (Fenton) | 185 Gravois Bluffs Plaza Dr | Fenton | MO | 63026 | (636) 349-5800 | 34,030 |
| 1103 | Olde Towne Plaza (Manchester) | 14850 Manchester Rd | Ballwin | MO | 63011 | (636) 391-5800 | 33,500 |
| 1201 | Lincoln Place (Fairview Hts) | 5925 N Illinois St | Fairview Heights | IL | 62208 | (618) 235-0819 | 31,984 |
| 3401 | Mall at Whitney Field (Leominister) | 100 Commerical RD #55 | Leominster | MA | 01453 | (978) 798-3040 | 39,936 |
| 4102 | Crossgates Commons (Albany) | 161 Washington Ave. Ext. | Albany | NY | 12205 | (518) 218-5070 | 37,261 |
| 1009 | Oracle-Wetmore (Tucson) | 4380 N. Oracle Rd. #E0A | Tucson | AZ | 85705 | (520) 292-3420 | 33,959 |
| 3403 | Holyoke Crossing | 33 Holyoke Street, Unit 5 | Holyoke | MA | 01040 | (413) 887-6360 | 32,362 |
| 3901 | South Broadway (Salem) | 412 S. Broadway | Salem | NH | 03079 | (603) 824-9340 | 33,016 |
| 4103 | Carousel Center (Syracuse) | 9090 Carousel Center Dr. | Syracuse | NY | 13290 | (315) 484-5250 | 34,999 |
| 4601 | Meadowbrook Crossing (York) | 2980 Whiteford Rd. | York | PA | 17402 | (717) 781-8150 | 32,993 |
| 1602 | Slide Road (Lubbock) | 6701 Slide Rd. | Lubbock | TX | 79424 | (806) 698-3800 | 33,107 |
| 3402 | King Phillips Crossing (Seekonk) | 201 Highland Ave. | Seekonk | MA | 02771 | (508) 336-2300 | 28,000 |
| 5401 | Greenfield | 4585 South 76th St. | Greenfield | WI | 53220 | (414) 944-0700 | 42,460 |
| 1601 | NW Expressway (McAllen) | 507 W. Expressway 83 | McAllen | TX | 78503 | (956) 217-3230 | 32,000 |
| 3404 | Endicott Square (Danvers) | 180 Endicott St. | Danvers | MA | 01923 | (978) 716-3080 | 36,192 |
| 4101 | Walden Village (Cheektowaga) | 2001 Walden Avenue | Cheektowaga | NY | 14425 | (716) 206-3180 | 33,190 |
| 4501 | Cascade Ave (Tigard Ultimate Elec) | 10031 SW Cascade Ave. | Tigard | OR | 97223 | (414) 944-0700 | 40,041 |

46

Exhibit B
Ultimate Electronics
Per Diem Occupancy

| Store No. | Location | 800000 ALARMS & SECURITY | 808000 COMMON AREA MAINTENANCE | 809000 COMPUTER EXPENSE | 839000 LICENSES & PERMITS | 905000 RENT - BUILDING | 906010 RENT - STORAGE | 908000 RENT - EQUIPMENT | 911000 EQUIPMENT EXPENSE | 916000 TAXES - OTHER | 920000 TAXES - PERS PROP | 920010 TAXES - REAL PROP | 922000 TELE - BASE | 922010 TELE - LONG DISTANCE | 923010 INTERNET COMP EXPENSES | 926000 UTILITIES | Total Per Diem Occupancy |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | Flatiron Crossing | 24 | 326 | | 3 | 919 | 0 | | 1 | 3 | -1 | 15 | 400 | 24 | 4 | 0 | 219 | 1,937 |
| 102 | University Park | 14 | 141 | | 4 | 972 | 0 | | 1 | 2 | 0 | 15 | 213 | 24 | 4 | 0 | 123 | 1,513 |
| 103 | Park Meadows | 16 | 160 | | 3 | 1,693 | 0 | | 1 | 4 | 0 | 26 | 410 | 24 | 4 | 0 | 267 | 2,609 |
| 104 | Chanson Plaza | 17 | 145 | | 3 | 1,051 | 0 | | 3 | 3 | 0 | 21 | 313 | 24 | 4 | 0 | 257 | 1,841 |
| 105 | Denver West | 15 | 257 | | 2 | 1,242 | 0 | | 6 | 4 | 0 | 24 | 490 | 24 | 4 | 0 | 264 | 2,332 |
| 106 | Boulder | 14 | 777 | | 9 | 1,755 | 0 | | 6 | 12 | 0 | 26 | 311 | 24 | 4 | 0 | 245 | 3,177 |
| 107 | Thornton | 30 | 18 | | 2 | 0 | 0 | | 0 | 14 | 29 | 35 | 183 | 24 | 4 | 0 | 211 | 553 |
| 110 | Fort Collins | 22 | 92 | | 6 | 1,168 | 0 | | 4 | 4 | 0 | 21 | 184 | 24 | 4 | 0 | 180 | 1,707 |
| 111 | Colorado Springs No | 20 | 49 | | 15 | 1,188 | 0 | | 2 | 5 | 0 | 24 | 255 | 24 | 4 | 0 | 202 | 1,792 |
| 601 | Tulsa | 3 | 69 | | 2 | 1,199 | 0 | | 3 | 12 | 0 | 24 | 116 | 24 | 4 | 0 | 209 | 1,748 |
| 602 | OKC I-240 | 15 | 36 | | 2 | 1,418 | 0 | | 2 | 0 | 0 | 106 | 106 | 24 | 4 | 0 | 185 | 1,886 |
| 603 | Quail Springs | 15 | 102 | | 9 | 1,145 | 0 | | 9 | 1 | 0 | 94 | 172 | 24 | 4 | 0 | 176 | 1,758 |
| 1501 | Bradley Fair | 13 | 165 | | 6 | 1,306 | 0 | | 5 | 2 | 0 | 99 | 456 | 24 | 4 | 0 | 204 | 2,185 |
| 301 | Pavillions at San Mateo (Albuquerque) | 20 | 261 | | 8 | 818 | 0 | | 7 | 4 | 0 | 0 | 114 | 24 | 4 | 0 | 220 | 1,493 |
| 1003 | Chandler Pavilions | 6 | 159 | | 2 | 1,215 | 0 | | 2 | 1 | 0 | 12 | 245 | 24 | 4 | 0 | 207 | 1,872 |
| 1004 | Arrowhead | 9 | 87 | | 2 | 1,527 | 0 | | 6 | 0 | 0 | 7 | 304 | 24 | 4 | 0 | 301 | 2,270 |
| 1005 | Chandler Festival | 18 | 182 | | 2 | 1,225 | 0 | | 6 | 1 | 0 | 6 | 168 | 24 | 4 | 0 | 220 | 1,856 |
| 1006 | Northsight Village (Scottsdale) | 6 | 148 | | 2 | 1,405 | 0 | | 7 | 0 | 0 | 6 | 335 | 24 | 4 | 0 | 263 | 2,200 |
| 1007 | Mesa Spectrum | 6 | 290 | | 9 | 1,389 | 0 | | 4 | 0 | 0 | 4 | 180 | 24 | 4 | 0 | 216 | 2,126 |
| 1008 | Desert Ridge | 15 | 431 | | 2 | 1,651 | 0 | | 4 | 1 | 0 | 11 | 189 | 24 | 4 | 0 | 259 | 2,590 |
| 401 | Rainbow Plaza | 11 | 134 | | 2 | 1,133 | 13 | | 6 | 0 | 23 | 7 | 93 | 24 | 4 | 0 | 178 | 1,627 |
| 402 | Tropicana | 12 | 113 | | 2 | 659 | 10 | | 6 | 0 | 17 | 2 | 108 | 24 | 4 | 0 | 218 | 1,176 |
| 702 | Burnsville Plaza | 29 | 99 | | 2 | 649 | 0 | | 2 | 10 | 0 | 0 | 165 | 24 | 4 | 0 | 138 | 1,121 |
| 703 | Tamarack Bus Campus (Woodbury) | 4 | 72 | | 2 | 1,383 | 0 | | 6 | 4 | 0 | 0 | 349 | 24 | 4 | 0 | 194 | 2,042 |
| 704 | Sportmart Plaza (Minnetonka) | 3 | 150 | | 2 | 813 | 1 | | 2 | 13 | 0 | 0 | 240 | 24 | 4 | 0 | 97 | 1,348 |
| 706 | Roseville | 4 | 69 | | 2 | 714 | 0 | | 3 | 11 | 0 | 0 | 235 | 15 | 4 | 0 | 143 | 1,199 |
| 707 | Centennial Lakes (Edina) | 6 | 292 | | 2 | 855 | 0 | | 3 | 6 | 0 | 0 | 630 | 24 | 4 | 0 | 132 | 1,953 |
| 709 | Shoppes at Arbor Lake (Maple Grove) | 17 | 520 | | 2 | 1,512 | 0 | | 3 | 12 | 0 | 0 | 651 | 33 | 4 | 0 | 272 | 3,027 |
| 1101 | Crossings at Mid Rivers | 6 | 87 | | 2 | 1,628 | 0 | | 0 | 0 | 0 | 4 | 171 | 24 | 4 | 0 | 178 | 2,105 |
| 1102 | Gravois Bluffs (Fenton) | 12 | 119 | | 3 | 937 | 0 | | 1 | 1 | 0 | 6 | 212 | 24 | 4 | 0 | 199 | 1,517 |
| 1103 | Olde Towne Plaza (Manchester) | 15 | 151 | | 11 | 1,143 | 17 | | 2 | 2 | 0 | 7 | 321 | 24 | 4 | 0 | 194 | 1,887 |
| 1201 | Lincoln Place (Fairview Hts) | 7 | -20 | | 2 | 1,199 | 1 | | 3 | 0 | 0 | 0 | 155 | 24 | 4 | 0 | 166 | 1,539 |
| 3401 | Mall at Whitney Field (Leominister) | 13 | 177 | | 4 | 1,464 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 2,185 |
| 4102 | Crossgates Commons (Albany) | 13 | 177 | | 4 | 1,170 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,891 |
| 1009 | Oracle-Wetmore (Tucson) | 13 | 177 | | 4 | 1,238 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,959 |
| 3403 | Holyoke Crossing | 13 | 177 | | 4 | 1,237 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,958 |
| 3901 | South Broadway (Salem) | 13 | 177 | | 4 | 1,709 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 2,430 |
| 4103 | Carousel Center (Syracuse) | 13 | 177 | | 4 | 724 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,445 |
| 4601 | Meadowbrook Crossing (York) | 13 | 177 | | 4 | 1,079 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,801 |
| 1602 | Slide Road (Lubbock) | 13 | 177 | | 4 | 1,289 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 2,010 |
| 3402 | King Phillips Crossing (Seekonk) | 13 | 177 | | 4 | 926 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,647 |
| 5401 | Greenfield | 13 | 177 | | 4 | 1,096 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,817 |
| 1601 | NW Expressway (McAllen) | 13 | 177 | | 4 | 1,255 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,976 |
| 3404 | Endicott Square (Danvers) | 13 | 177 | | 4 | 1,773 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 2,495 |
| 4101 | Walden Village (Cheektowaga) | 13 | 177 | | 4 | 1,119 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 1,840 |
| 4501 | Cascade Ave (Tigard Ultimate Elec) | 13 | 177 | | 4 | 1,322 | 1 | | 3 | 4 | 2 | 18 | 265 | 24 | 4 | 0 | 204 | 2,043 |
| 46 | Total | 608 | 8,163 | 175 | 63 | 54,311 | 0 | | 154 | 190 | 97 | 841 | 12,185 | 1,114 | 185 | 0 | 9,397 | 87,483 |